THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KURT JURGENS BAUER,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR A SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(2)**<br><br>Case No. 4:20-cr-00082-DN<br><br>District Judge David Nuffer |

Defendant, Kurt Bauer ("Bauer"), filed a Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) and Part A of Amendment 821 to the Sentencing Guidelines.[1] The United States filed an Opposition to Defendants' Motion for a Sentence Reduction.[2] Bauer filed a Reply[3] in Support of his Motion, and the United States filed a Sur-Reply[4] in opposition. Bauer then filed his Sur-Reply.[5] Based on the filings and evidence in the record, Bauer's Motion is denied.

---

[1] Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) (USSG Amendment 821(a)), docket no. 56, filed February 17, 2024.

[2] United States' Opposition to Defendant's Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), docket no. 60, filed March 27, 2024.

[3] Reply in Support of Motion for Sentence Reduction, docket no. 70, filed June 15, 2024.

[4] United States' Sur-Reply in Response to Defendant's Reply in Support of His Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), docket no. 74, filed.

[5] Sur-Sur-Reply in Support of Motion for Sentence Reduction, docket no. 75, filed July 5, 2024.

## BACKGROUND

### A.     Bauer's Fraudulent Scheme

Bauer ran an advance-fee scheme targeting vulnerable elderly victims and others throughout Southern Utah and Nevada.[6] For his scheme, Bauer would tell victims that he was on the brink of receiving "hundreds of millions or even billions of dollars," and needed short-term financial assistance to unlock the windfall.[7] In exchange for those upfront payments, Bauer promised victims a substantial cut of the frozen funds once they were released.[8] In furtherance of his scheme Bauer falsified bank records, created fake identities, and even impersonated federal judges.[9] Additionally, Bauer

> enlisted help from unknown accomplices to speak with victims over the phone, lending further credibility to his false assurances. Acting as a fictitious court employee named "Charlotte Jensen," Bauer sent hundreds of texts to several victims explaining the bond process, reporting on fake court hearings, detailing the amount of money available, and demanding money. In effect, Bauer co-opted the legitimacy and power of federal court to compel further payments from his victims and continue enriching himself.[10]

Bauer's scheme also relied on threats of physical violence. He told one victim that he would "break [another victim's] back."[11] Bauer would also make foreboding statements about the consequences of crossing him or failing to make bond payments such as mafia-style executions and broken arms, legs, and hands.[12]

---

[6] Opposition at 2; Presentence Investigation ("PSR") at ¶¶ 18, 22, 24, docket no. 46, filed February 12, 2021.

[7] Opposition at 2; PSR ¶¶11, 13-14.

[8] Opposition at 3; PSR ¶14.

[9] Opposition at 3; PSR ¶¶15-16.

[10] Opposition at 3; PSR ¶¶15-17.

[11] Opposition at 3; PSR ¶22.

[12] Opposition at 3-4; PSR ¶¶20-22.

Bauer targeted individuals for his scheme that would go on to suffer substantial financial hardship due to his actions.[13] Bauer managed to steal at least $856,422 from more than ten such victims. Bauer would use his funds to enjoy a lavish lifestyle, spending prolifically on hotels, restaurants, and credit card payments.[14]

### B. Indictment, Plea Agreement, and Sentencing

On July 23, 2020, Bauer was charged in a five-count indictment.[15] Following extensive negotiations with the United States, Bauer plead guilty to all charges in exchange for a stipulated sentence between 48–78 months, which fell at or below the low end of his recommended Sentencing Guidelines range of 78–97 months.[16] Bauer also retained the right to withdraw his plea if the plea agreement was not accepted.[17]

At sentencing, I expressed concern "about the limitation on my ability to go above the guideline range," noting "this was a case where perhaps that should be done."[18] After arguments were made at the hearing, I accepted the agreement, setting Bauer's sentence of incarceration at the high end of the parties' stipulated range at 78 months followed by 36 months of supervised release.[19] The Government estimates that Bauer has a projected release date of February 9, 2025.[20]

---

[13] Opposition at 4; PSR ¶¶22, 24.

[14] Opposition at 4; PSR ¶24.

[15] Opposition at 5; Sealed Indictment at 1-6 docket no. 1, filed July 23, 2020.

[16] Opposition at 5.

[17] Opposition at 5.

[18] Opposition at 5; Transcript of Sentencing Hearing on February 25, 2021 at 19:1–3, docket no. 53, filed April 8, 2021.

[19] Opposition at 5; Motion at 2-3.

[20] Opposition at 6.

### C. Bauer Medical Condition & Motion for Sentence Reduction

Bauer is serving his sentence at Federal Medical Center (FMC) Butner, where he has been receiving treatment for an assortment of pre-sentencing medical conditions. The list of Bauer's medical problems includes maladies such as Type 2 diabetes, anxiety disorder, sleep apnea, hypertension, varicose veins, intestinal obstruction liver disease, liver cancer, an abdominal aortic aneurysm, and low back pain.[21] On February 17, 2024, Bauer filed the instant Motion, arguing his sentence should be reduced to 70 months—the low end of his amended guideline range under Amendment 821.[22]

## LEGAL BACKGROUND

Effective November 2023, the United States Sentencing Commission amended the criminal history calculations for the Sentencing Guidelines with Amendment 821.[23] Prior to the Amendment, two criminal history points (i.e., status points) were added under Section 4A1.1(d) if the defendant committed the instant offense while on probation.[24] As amended, no status points are added to individuals who have accrued six or fewer criminal history points under other portions of Section 4A1.1.[25] Prisoners may seek a reduced prison sentence under Amendment 821 by filing a motion under 18 U.S.C. § 3582(c)(2).

In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court explained the two-step process for applying a retroactive guideline amendment. At step one the court is to

---

[21] Reply at 6-7.

[22] Opposition at 6.

[23] U.S.S.G. § 4A1.1, *amended by* Amendment 821.

[24] U.S.S.G. § 4A1.1(d).

[25] U.S.S.G. § 4A1.1(e). The following language was stricken from § 4A1.1(e): "(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Amendment 821.

"determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized."[26] This step requires "determin[ing] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing,"[27] while leaving "all other guideline application decisions unaffected."[28] At step two, courts must "consider any applicable § 3553(a) factors and determine whether, in [their] discretion, the reduction authorized . . . at step one is warranted in whole or in part under the particular circumstances of the case."[29] A district court may exercise its discretion to grant less of a reduction than the amended guidelines permit, or even decline to adjust a sentence to the same point in the new guideline range as the original sentence fell within the former range.[30]

## DISCUSSION

### A. Bauer qualifies for a sentence reduction

The United States, Probation, and Bauer all agree that Bauer is eligible to apply for a sentence reduction.[31] Prior to the amendment, Bauer was given two additional "status points" under the former § 4A1.1(d), because he ran his scheme while on probation. This put him as a Category III offender, resulting in a guideline range of 78-97 months at sentencing.[32] With the amendments, Bauer no longer receives any status points because he had less than seven criminal history points at the time of his sentencing.[33] This results in a Criminal History Category II,

---

[26] *Dillon*, 560 U.S. at 827.

[27] *Dillon*, 560 U.S. at 827.

[28] U.S.S.G. § 1B1.10(b)(1).

[29] *Dillon*, 560 U.S. at 827.

[30] *See United States v. Meridyth*, 573 F. App'x 791, 794 (10th Cir. 2014).

[31] Motion at 1-2; Opposition at 9.

[32] Opposition at 9; Sealed Probation Report at ¶4, docket no. 59, filed March 13, 2024 Presentence Investigation Report Regarding Motion for Sentence Reduction Re Amendment 821 Report at 15, docket no. 46, filed February 12, 2021.

[33] *See* U.S.S.G. § 4A1.1(e); *see also* PSR ¶ 66.

yielding an amended guideline range of 70–87 months in prison.[34] Bauer is eligible to apply for a reduction under § 3582(c) because the low end of this range is lower than the sentence originally imposed.[35]

### B. The § 3553(a) Factors Weigh Against a Sentence Reduction

"Although a guideline amendment may make a defendant 'eligible for a sentence reduction under § 3582(c)(2),' an amendment 'in no way creates a right to sentence reduction.'"[36] A reduction may only be granted if the § 3553(a) factors weigh in favor of a lower sentence. Broadly defined, these factors consider: (1) the offense and offender characteristics, (2) the need for the sentence "to reflect the basic aims of sentencing," (3) sentencing disparities amongst similar defendants, and (4) the need for restitution.[37] However, "the court need not rely on every single [§ 3553(a)] factor" and "no algorithm exists that instructs the district judge how to combine the factors or what weight to put on each one."[38]

Section 1B1.10 also provides policy statements applicable to retroactive guideline amendments. It requires courts to "consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment."[39] "[T]he court may [also] consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment."[40] Ultimately, the court should

---

[34] Presentence Investigation Report Regarding Motion for Sentence Reduction Re Amendment 821 Report at ¶ 4, docket no. 59, filed March 13, 2024.

[35] USSG §1B1.10 ("(A) Eligibility.-- Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (d) that lowers the applicable guideline range[.]").

[36] *United States v. Lindsey*, 527 F. App'x 700, 702 (10th Cir. 2013) (unpublished) (quoting *United States v. Osborn*, 679 F.3d 1193, 1195–96 (10th Cir. 2012)).

[37] *United States v. Walker*, 844 F.3d 1253, 1256 (10th Cir. 2017).

[38] *United States v. Gross*, 44 F.4th 1298, 1305 (10th Cir. 2022).

[39] U.S.S.G. § 1B1.10 App. Note 1(B)(ii).

[40] *Id.* § 1B1.10 App. Note 1(B)(iii).

"engage in a holistic inquiry" of the relevant factors, keeping in mind the mandate "to impose a sentence sufficient, but not greater than necessary to comply with the purposes of section 3553(a)(2)."[41]

### 1. The nature and circumstances of the offense support denying the motion

The nature and circumstances of the offense support denying the motion. For nearly ten years Bauer targeted vulnerable individuals and others so he could defraud them of thousands of dollars with false statements, fake bank statements, numerous threats of physical violence, and co-conspirators that impersonated individuals in positions of trust and authority.[42] Bauer also impersonated federal judges and a federal court administrator in furtherance of his scheme.[43] In total, Bauer defrauded more than ten victims of at least $856,422.[44] The United States correctly argues that "the gravity of Bauer's offense cannot be overstated."[45]

Bauer's fraudulent activities have devasted some of his victims. In one example, Bauer persuaded an owner of a ranch in Utah to turn down a $3.2 million dollar offer for his ranch and offered to purchase the property for $3.5 million when Bauer's $13 billion in funds were unfrozen.[46] Bauer lived in the home for approximately two years, but he never paid the victim, J.M., for the property.[47] J.M. lost the property to foreclosure, and both J.M. and Bauer were

---

[41] *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007) (quoting *United States v. Wilms*, 495 F.3d 277, 280 (6th Cir. 2007)).

[42] Opposition at 12.

[43] PSR ¶15.

[44] Opposition at 1.

[45] Opposition at 12.

[46] PSR ¶19.

[47] PSR ¶19.

evicted.[48] After this occurred J.M. and his wife moved into a motel in Utah, and J.M.'s wife took a position in the food-service industry to help support the couple.[49] When J.M. drafted his Victim Impact Statement at or around February 2021, he was 63 years old. Additionally, J.M. indicated his wife is also at an advanced age.[50]

### 2. Bauer's criminal history supports denying the motion

Bauer's criminal history supports denying this motion. Bauer's 40-year history of criminal conduct includes convictions for murder, attempted murder, battery, fraud, and possession of a dangerous weapon by a restricted person.[51] Moreover, when Bauer was running his advance-fee scheme, he was arrested and convicted for two unrelated crimes.[52] This history supports denying Bauer's motion.

### 3. The need to deter Bauer from further criminal activity and protect the public from him further supports denying the motion

The need to deter Bauer from engaging in future crimes and to protect the public from him also supports denying Bauer's Motion. From 2011 until April 2020 Bauer engaged in his advanced-fee scheme where he defrauded at least ten people.[53] Bauer argues there is little risk of recidivism because he is a model inmate, he is over 60 years old, and is in poor health.[54] Bauer's argument is unpersuasive. While Bauer is almost 61 years old, he committed his fraud relatively

---

[48] PSR ¶19.

[49] J.M.'s Victim Impact Statement at 1, docket no. 46-4, filed December 12, 2021.

[50] J.M.'s Victim Impact Statement at 1 ("Now for three years we have lived in a motel room in Utah and my wife is work[ing] for Wendy's. It's a very sad time in our lives at our age.").

[51] Opposition at 13.

[52] Opposition at 13.

[53] Opposition at 12.

[54] Motion at 3; Reply at 5.

recently when he was 56 years old.[55] The Court does not believe the passage of approximately five years has materially reduced Bauer's risk of recidivism. Additionally, Bauer's illnesses, while serious, are unlikely to materially reduce the possibility of recidivism because Bauer completed his advanced-fee scheme by using a cell phone, forging bank statements, and speaking to his victims. These activities do not require the perpetrator to be in optimal physical condition. The need to protect the public supports denying Bauer's Motion.

### 4. Bauer's medical conditions do not support granting his motion

Bauer argues his motion is supported by his life-threatening medical issues. Bauer reasons his liver cancer and aortic aneurysm warrant a reduction of his prison sentence from 78 months to 70 months because these conditions could be life threatening.[56] Bauer should have made his health-related arguments under a compassionate release motion pursuant to 18 U.S.C. § 3582(c)(1)(A) instead by a motion under 18 U.S.C. § 3582(c)(2).[57] Bauer is not required to bring his health-related arguments under a motion for compassionate release, but his health-related arguments on this motion do not outweigh the other factors the district court considers for a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). Specifically, the seriousness of Bauer's crimes and the need to protect the public from him outweigh the argument that Bauer's sentence should be reduced because of his serious medical conditions. The court declines to reduce Bauer's sentence from 78 months to 70 months.

### C. Bauer's Motion is also denied because he waived his right to seek a sentence reduction under § 3582(c)(2)

A plea waiver is enforceable if: (1) the request for relief falls within the scope of the waiver, (2) the defendant knowingly and voluntarily waived the rights at issue, and (3) no

---

[55] Bauer was born October 4, 1963, and his advanced-fee fraud was perpetrated from 2011 until April 2020. PSR at 2.

[56] Reply at 7.

[57] Opposition at 15; Reply at 10.

miscarriage of justice would result from enforcing the waiver.[58] All three elements are present here and thus Bauer's plea waiver is enforceable.

> First, in Bauer's Rule 11(c)(1)(C) Statement in Advance of Plea, Bauer agreed that he:
>
> Knowingly, voluntarily, and expressly waive my right to challenge my sentence, unless the sentence imposed is greater than the sentence set forth in this agreement. . . . <u>This waiver includes any motion for modification of my sentence under 18 U.S.C. § 3582(c)(2)</u>.[59]

Bauer's Motion would fall within the scope of the waiver if (1) the sentence the court imposed did not exceed the sentence contemplated in the plea, and (2) the Motion is brought under § 3582(c)(2). The first element is satisfied because the sentence imposed did not exceed the sentence contemplated by the plea agreement.

Second, in signing the plea waiver, Bauer attested that he "knowingly, voluntarily, and expressly" waived his right to challenge the sentence under 18 U.S.C. § 3852(c)(2).[60] Bauer argues his waiver was not knowing because the agreement failed to notify him that he was giving up his right to request a guideline reduction that the Sentencing Commission makes retroactive.[61] The Court disagrees because the waiver specifically states Bauer was waiving his right to *any* motion under 18 U.S.C. § 3582(c)(2), which includes any amendment that the Sentencing Commission makes retroactive. Bauer knowingly waived his right to bring a motion under 18 U.S.C. § 3582(c)(2) for all future eventualities. There is no reason to rewrite the waiver provision and disrupt the agreement that was struck between the government and Bauer. The second element is satisfied because Bauer signed

---

[58] *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004).

[59] Statement in Advance of Plea at 6, docket no. 42, filed December 18, 2020 (emphasis added).

[60] Statement in Advance of Plea at 6.

[61] Sur-Sur-Reply at 7.

a Statement in Advance of Plea that stated he knowingly, voluntarily, and expressly waived his right to file *any* motion to modify his sentence under 18 U.S.C. § 3582(c)(2).[62]

Third, Bauer fails to set forth any reason why it would be a miscarriage of justice to enforce the waiver. The Tenth Circuit has identified four situations where enforcing a waiver would cause a miscarriage of justice: "(1) where the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful."[63] Bauer "bears the burden of demonstrating that enforcing the waiver will result in a miscarriage of justice."[64] Bauer does not argue there would be any miscarriage of justice by enforcing the agreement, but instead argues the court should bring a motion *sua sponte* to modify his prison sentence under 18 U.S.C. § 3582(c)(2).[65] The court declines to exercise its discretion to bring a *sua sponte* motion on Bauer's behalf. All three elements of the plea waiver are met; the plea waiver is enforceable; and Bauer's motion is denied on this ground. There is no injustice in this result.

---

[62] Statement in Advance of Plea at 6, 9.

[63] *United States v. Viera*, 674 F.3d 1214, 1219 (10th Cir. 2012) (quotations omitted).

[64] *Id.*

[65] Sur-Sur-Reply Reply at 5.

## CONCLUSION

THEREFORE, IT IS HEREBY ORDERED that Bauer's Motion under 18 U.S.C. § 3582(c)(2) to reduce his prison sentence from 78 months to 70 months is DENIED.

Signed August 30, 2024.

BY THE COURT

David Nuffer
United States District Judge